Voorhees, J.
The pleadings in this case are numerous and lengthy. It will be sufficient, however, for 'the purpose of presenting the questions of law and fact involved to state the following:
Plaintiff, Anthony Wright, on May 2nd, 1894, filed his'petition against Sarah Snell, Thomas Mowery, John Mowdry, Jacob Snell, Alfred J. Thomas and W. A. Mackey, setting fo¿3» in substance, that at the November term, 1893, of the common pleas court of this county, he recovered a judgment against Sarah Snell for $540.00, and costs, which judgment at fte time of the filing of the petition was unpaid and unreverseH; *88 that on December 8th, 1893, execution was issued on the, judgment and was levied on the real estate of Sarah Snell, described in .the petition; that the defendants, Thomas Mowery,-'John Mowery, Jacob Snell, Alfred J. .Thomas and W. Á. Mackey, claimed to have some liens or interest in the premises as against Sarah Snell; and that the action was brought for the púrpose of marshalling the liens, and to clear said premises from any cloud upon the title by reason of any adverse claim of the defendants, and to enable plaintiff to effect a sale of the premises to satisfy his said judgment; and that the defendants be required .to set up their claims that the validity thereof might be determined.
The defendant Thomas Mowery, on June 4th, 1894, filed his answer and cross-petition in said action in which he averred: That he had read the answer and cross-petition- of Alfred J. Thomas, filed -in said action, and that he admitted the same to be true, and adopted their allegations as a part of his answer.
The defendant Alfred J. Thomas, in his answer and cross-petition, filed June 4th, 1894-, set forth the judgments in favor of Thomas Mowery against Sarah Snell, which had -theretofore been recovered in the counties of Stark and Ashtabula, this state, and that Thomas Mowery was indebted to him (Alfred J. Thomas) in an aggregate sum of $1600.00; -that by virtue of said judgments against Sarah 13nell and the levy of executions issued thereon upon the premises described in plaintiff’s petition, Thomas Mowery secured a lien on said premises; that said judgments were assigned by said Thoma-s Mowery to him, the .said Alfred J. Thomas, to secure his said indebtedness of $1600.00. These allegations Thomas Mowery adopted as a part of his answer.
After Thomas Mowery’s answer and) cross'-petition was filed, Sarah Snell and John Mowery in September, 1894, filed their answers, alleging that on June 23rd, 1894, Sarah Snell sold the real estate in the petition described to John Mowery, and on -the same day executed a deed to him. The deed was recorded in June, 1894. Mrs. Snell, in her answer, alleged that the judgment of the plaintiff (the judgment for $540.00) had been fully paid.
*89 Plaintiff Wright, on September 7th, 1894, filed a supplemental petition in'said action, in which he set up that he held a note against Thomas Mowery for $867.00 and one for $1000.00; the latter'was -made by him, Thomas Mowery, and Sarah Snell in July, 1893; that oh June 22nd, 1894, Thomas Mowery, for a' valuable consideration, assigned as security for -these last mentioned notes the said judgments a^g-ainst Mrs Snell to the plaintiff; that by the assignment of these judgments, he, Wright, secured -a lien on -the premises described in his original petition, for the payment of said two notes. The assignment of these judgments is entered'on the appearance docket of the court of common pleas of this (Wayne) county. The assignment bears date June 22nd, 1894, and the judgments were assigned to Wright to secure said notes, and for other considerations then existing and passing between the parties -at that time.
The cause has been submitted to this court upon the -plead-' ings and evidence. From the evidence and exhibits submitted, the court finds, as the material facts -bearing upon the issue between the panties, and which -are summarized, as follows: ■
■ The assignment of said judgments by Thomas Mowery Jo the plaintiff, Wright, was made on the day it bears date, to-wit: June 22nd, 1894, and was entered upon the appearance docket •of said common pleas court on the 23rd day of June, 1894- On the 23rd day of June, 1894» Thomas Mowery was the owner of -a farm of 160 acres, known and designated in the testimony as the “Baum Farm.” This farm was to be sold on execution June 23rd, 1894, in a foreclosure proceeding against Thomas Idow-ery.
To save this farm from forced sale, Mowery .secured the aid and assistance of the plaintiff Wright, who furnished him means to pay off the judgment on which the farm was to be sold June 23rd, 1894. On the morning of June 22nd, 1894, Wright informed Mowery, through Mowery’s agent and attorney, Alfred J. Thomas, that he would advance the money to Mowery to pay off the judgment against -the “Baum Farm,” provided Mowery would pay him $50.00, and secure sáid other claims, namely, that of $867.00 and the $1000.00 notes on which last *90 note Mrs. Snell was surety. Thomas Mowery agreed to do so, and accordingly, to secure these two notes and as part consideration for the money so advanced by the plaintiff to pay off said claim against his farm, Thomas Mowery did on June 22nd, 1894, assign to Wright the Snell judgments.
When this arrangement was made John Mowery and Mrs. Snell had knowledge of their brother Thomas Mowery’s situation, as to the pending sale of the “Baum farm” under said foreclosure proceedings, and that the farm would be sold on said day, June 23rd, unless said claim against it was in some way adjusted.
On the same day, June 23rd, 1894, Mrs. Snell sold to her brother, the :said John Mowery, said premises on which said judgments were liens, and which were the day before assigned by Thomas Mowery to the plaintiff, as hereinbefore found.
The contract of sale between Mrs. Snell and her said brother is in writing, and among other things it provides that Wright’s interest in the farm resulting from the assignment of said judgments, should be deducted from the purchase price thereof.
At the time Mrs. Snell and John Mowery filed their several answers to the answer and cross-petition of Alfred J. Thomas and the answer of Thomas Mowery, wherein he adopted the allegations of Alfred J. Thomas’ answer, they made no complaint or attack upon these judgments algainst Mrs. Snell therein set up. It was not then claimed or averred by either of them, that these judgments were fraudulent, or that the notes, upon which the judgments were obtained were without consideration and were fraudulent in their inception; but their contention then was that Thomas Mowery held the claims and the judgments rendered thereon in trust for Mrs. Snell for the purpose as expressed in a contract .between her and her brother Thomas, made at the time the notes were executed. The contention as made in their answers was, that as against Alfred J. Thomas, that he was not entitled to have his claim paid from the proceeds of Mrs. Snell’s land, as these judgments were held by Thomas Mowery in trust for her.
It was long after these answers were filed, and after the *91 death of Thomas Mowery, and of the plaintiff Wright, that Mrs. Snell and John Mowery changed their contention and claim as to the nature and character of these judgments. Now these judgments are attacked by them for the first time, as being fraudulent in their inception; and that Thomas Mowery obtained the notes and the judgments thereon by fraud participated in by Alfred J. Thomas.
It is claimed by Mrs. Snell and John Mowery, that Thomas Mowery and Alfred J. Thomas, by fraud induced Mrs. Snell to execute these notes, upon which said judgments were after* wards taken, on the pretext that the same were necessary to enable her to cover up her property, and save it from judgments she was then anticipating, and was threatened with, that might be rendered against her in favor of her husband, and her son in law, Mackey.
As questions of fact the court find from the testimony: That said notes and judgments were fraudulent in their inception; hat the transaction between Thomas Mowery and his sister, Mrs. Snell, participated in by Alfred. J. Thomas was entered into for the purpose to enable Mrs. Snell to cover up her property and to create liens thereon for the purpose and with the intent to defeat any judgment or judgments that were then threatening her, in suits and controversies then pending and existing between her and her husband, Jacob Snell, and her son in law, W. A. Mackey. That for the purpose of saving her property from such anticipated judgments, the said notes were made; and said judgments were obtained and executions levied on her land in favor of said Thomas Mowery, for the sole purpose of having said judgments appear as liens upon her said property, with the secret understanding between them, that said judgments were to be owned and held by Thomas Mowery in trust for h.er benefit, and that of her daughter, the wife of said W. A. Mackey. That the plaintiff Wright, at the time said judgments were assigned to him by said Thomas Mowery, had no knowledge, directly or constructively, of the fraudulent purpose existing between said Thomas Mowery and his sister, Mrs. Snell, or of Alfred J. Thomas, in the execution of said notes, or in obtaining said judgments and levy of execution *92 thereon; and that said Wright obtained said judgments by assignment in good faith on the 22nd day of June, 1894, for a valuable consideration, and without any knowledge that the same were fraudulent in their inception, or were intended to enable said Sarah Snell to cover up her property or save the same from said anticipated judgments. That by the judgments and the levy of executions brought about by the active participation of Mrs. Snell, liens were put upon her property (the real estate here in controversy), and in the name and in favor of Thomas Mowery under a secret trust to avoid apprehended judgments against her.
Mrs. Snell cannot now complain, after these judgments have been assigned by the apparent owner to an innocent purchaser, for value, that they were fraudulent in their inception, and procured for. the purpose of saving her property from such apprehended judgments. A court of equity will leave her ia the position in which she placed herself and will decline ta give her relief by setting aside the judgments. She made the-notes, from which the judgment liens resulted, for the unlawful purpopse of placing her property beyond the reach of the law, if these threatened judgments should prove successful. This was against- public policy, and a court of equity cannot aid a person under such circumstances. Pride v. Andrew, 51 Ohio St., 405; Brinkerhoff v. Tracy, 55 Ohio St., 555, 572; Kihlkin v. Kilhkin et al., 59 Ohio St., 106-121; Trimble v. Doty, 16 Ohio St., 119; McCortle v. Bates, 29 Ohio St., 419.
As said by Boynton, J., in McCortle v. Bates, supra, “It is-one of the oldest rules of the common law, that contracts contrary to sound morals, or against public policy, will not be enforced by courts of justice, ex facto illicito non oritur actio;' and the court will not enter on the inquiry, whether such contract, would or would not, in a given case, be injurious in its consequences if enforced. It being against the public interest to .enforce it, the law refuses to recognize its claim to validity.”
It is contended on behalf of defendants, and especially the defendant John Mowery, that he was not a party to these judgments against Mrs. Snell, but afterwards became in *93 terested in the property 'by purchase, and that as such purchaser, he can attack the judgments for fraud, even as against Wright, the assignee of Thomas Mowery; that Wright stands in no better situation in this regard than Thomas Mowery, the assignor.
At the time these judgments were .rendered, and up to the time they were assigned by Thomas Mowery to the plaintiff. Wright, John Mowery had no interest in this property of Mrs. Snell. So far as he was concerned, he was an entire stranger to the transaction; and when he became concerned by the contract of purchase made June 23rd, 1894, he knew that the plaintiff Wright, claimed interest in the judgments, as in the contract of purchase, that day made between, him and Mrs. Snell, reference is had to these judgments, as the contract provides that Wright’s interest in the judgments, resulting from the assignment would be deducted from the purchase price. It is only those persons whose rights are interfered with; those who are injured oy the transaction alleged to be fraudulent, that have the right to interfere to set it aside. Strangers have nc| interest, and, therefore, no right to question its validity. Hd would stand to the transaction the same as a subsequent creditor in a fraudulent conveyance. He must show actual fraud. Yeend v. Weeks, 104 Ala., 331; s. c. 53 Am. St. Rep., 50.
Was Wright an innocent purchaser of these judgments?
.First, was there a consideration for the assignment? The consideration is, that Thomas Mowery was anxious to save his “Baum farm” from foreclosure sale. He was indebted to the plaintiff Wright, on two notes, on one of which Mrs. Snell was liable. Wright was unwilling to advance money to Mowery on the “Baum farm,” unless he had some additional security for his indebtedness that he held against Thomas Mowery. This situation was known to John Mowery. ‘
In order to accomplish the end in view, namely, to save the farm from sale, the agent and attorney of Thomas Mowery, Alfred J. Thomas, applied to Wright for a loan by which this could be accomplished. The condition imposed by Wright, upon which he would advance-the money, required the payment of $50.00 cash, and that security be given to him for these two notes. Thomas, as such agent and attorney, proposed to *94 Wrjght, that Thomas Mowery would assign to him these judgments against Mrs. Snell, which offer was accepted by Wright. The transfer .was made, and the sale of the “Baum farm” was prevented. ......
It is not sufficient on an issue of want of consideration to show! that there .was no- consideration moving to the promisor, unless it precludes the possible fact that there was detriment or loss, to the promisee, which constitutes a consideration for. a promise as well as a benefit to the promisor.
In the transfer of' these judgments there was a benefit passing to Thomas Mowery, by saving his farm from sale, and there was both benefit and possible detriment to Wright, the promisee, by advancing his money, and in getting security for his unsecured notes.
. We, therefore, hold,that this transaction shows a sufficient consideration for the assignment, and that we are supported in this by the supreme court in Dalrymple, Admr. v. Wyker, Admr., 60 Ohio St., 108;Irwin v. Lombard University, 56 Ohio St., 9.
- 'Second. It is contended that the plaintiff Wright, knew that Alfred J. Thomas was acting not only for him in negotiating this loan and in the transfer of the judgments, but was also-the attorney of Thomas Mowery, and as such attorney of Thomas Mowery, had knowledge of the fraudulent transactions out of which the notes upon which the judgments were obtained arose, and that said Thomas’ knowledge is chargeable to-■Wright.
Suppose that Thomas had such knowledge, is his ■knowledge chargeable to the plaintiff Wright, simply because-lie was Wright’s attorney in making the transfer of the judgments? In other words, if an attorney has two clients, and there has been a fraud perpetrated upon one client and the attorney participated in that fraud, is it to be presumed in law, in the absence of direct knowledge and notice to the other client, that such other client has knowledge of the fraudulent trans- . action?
If an attorney, while conducting a transaction for his client acquires knowledge, which it would be breach of professional ■ confidence for him to disclose, and he is subsequently employed *95 by another person, the latter is not chargeable with the knowledge thus acquired and possessed by the attorney. Melm v. Pabst Brewing Co., 93 Wis., 153; s. c. 57 Am. St., 899, 907.
It is claimed that there is some proof tending to show that ■the plaintiff Wright, had knowledge of said transaction out of •which said notes grew. This claim is made from the testimony of Mrs. Hines, who on one occasion was at the house of Mr. Wright, when Thomas Mowery was present. Her statement of the transaction on this occasion on meeting Mr. Thomas Mowery, at the door, is as follows: “He made the remark that “she was the lady that was at Mrs. Snells on the occasion that these notes were executed.” She was later introduced to Mr. Wright, when some allusion was agáin made about the notes. ,Mr. Wright said. “He supposed that was'the best thing that she ■could do.”
- It is contended that from this statement of Mr. Wright, it •is to be inferred that he had knowledge of the fraudulent execution of these notes. We do not think such inference can be fairly drawn from this isolated statement. Mrs. Snell was his debtor, ■.and is it reasonable to suppose that he would engage in a transaction and advance money to the party who was charged with participating in that fraud ? And is it reasonable that he would want her property covered up in this way when she was his debtor, as it could be of no possible advantage to him ?
It is further claimed that Mr. Kean, on the occasion that these judgments were transferred, Mr. Wright referring to the same, remarked, that he did not know whether there was , much in the security that he got. Does it necessarily follow ■from this remark that he had knowledge of the origin of the notes upon which the judgments were taken, and that the transaction was fraudulent in its inception? Such a remark is not unnatural; a party receiving such security may have some doubt how good it is, or how much he may realize from it. But it is sought' to give it force simply because he made such a remark, thereby intimating that he had actual knowledge of the fraud,' ■.and therefore, had doubts as to what he would realize from it. Booking at the whole transaction and the circumstances sur *96 rounding the parties at the time the transfer of the judgments was made, June 22nd, 1894, we find that there is not sufficient evidence to justify a conclusion, that the plaintiff Wright, had actual knowledge of the fraud charged upon Thomas Mowery, Alfred J. Thomas, and Mrs. Snell, in the execution of the notes and the judgments and levy thereon, and the purpose for which the same were made.
■ We come now to the most difficult question in the case, and that is the contention, that when the plaintiff, Wright, took ■these judgments by assignment as collateral security for the '-loan that he made Thomas Mowery on the 22nd of June, 1894, Tor the purpose hereinbefore stated, as such ;assignee¡ he is ■ chargeable with the infirmities that existed in the original •claim. Of course, they do not stand as commercial paper, transferred before due. The contention is, that they are chosés un action, and when they were assigned' to Wright, although •for a full and valuable consideration,'yet, they came to himwith \all the infirmities that could be urged against Thomas MoWéry, . the assignor.
If they can be so assailed, who can do it ? Can John Mowefy To attack the judgment and assignment?
Between the parties to the judgments, the assignee stands in the place of the assignor with no better' rights; but as to the claims of third persons, the purchaser of an equity or a chose in action stands unaffected by fraud of which he had no knowledge express or constructive. The assignee is not bound or affected by any fraud committed by the original parties to the judgments. 2 Freeman on Judgments, section 428 p. 743; 2 Black cn Judgments, section 956, p. 1135; Wright v. Levy, 12 Cal., 257; McCotter v. McCotter, 16 Abb. Pr., 265; Hale v. First National Bank, 50 Iowa, 642; Starr v. Hoskins, 26 N. J. Eq., 414; Murray v. Lilburn, 2 Johns Ch. 442; Hendrickson’s Appeal, 24 Pa. St., 363; Greene v. Daily, 5 Mason 214; Garland v. Harrison, 17 Mo. 282; Ives v. Addison, 39 Kan., 172; s. c. 17 Pac. Rep., 797.
As between John Mowery and the plaintiff Wright, Mowery being a third party and a stranger to the judgments, the plaintiff takes the judgments free from latent equities that might exist between Mrs. Snell and the assignor, Thomas Mowery; *97 and as between John Mowery, the plaintiff is not,affected by any fraud that may have been perpetrated, unless he has. or had; actual or constructive knowledge of the same». • . . .
How stands the case, as between Mrs. Snell, and the plaintiff Wright? By authorities supra, she could not complain as against Thomas Mowery, the assignor, for the reason that the transaction between herself and Thomas Mowery was a fraud upon the law and against public policy; and a court of equity will grant her no relief. And another principle of equity arisfes here. By whose fault or act was it, if either Mrs. Snell or Mr. Wright is to suffer by this transaction? This fraud, of Thomas Mowery and Mrs.- Snell, as between these parties,, in whose, favor is the equity ? -
By whose fault was it that these alleged fraudulent judgments were obtained? By whose fault was it that after the judgments were obtained, that the release or .satisfaction ris kept off the record ? If they were released and not a valid lien •upon her property, why does she in her contract with her brother John Mowery, make provision that th'p interest of Wright in said judgments shall be retained out pf the purchase money by her brother John ? These omissions and acts of apparent acquiescence in the validity of these judgments are all chargeable to Mrs.. Snell. If she had been vigilant; if she had not given these notes; if she had not kept- the relea'se from the record, so that it could have been éxamined, tjie plaintiff Wright would have had the means of knowing, that there was no valid judgments or lien against her 'property. She is estopped from asserting her rights against the plaintiff, and if she be even an innocent party as between herself and the plaintiff she must bear the loss rather than Wright, the plaintiff, under the well recognized rule of equity that where, one of two equally innocent persons must suffer, he who has'put . if in the power of another to do the injury, must bear‘the loss.
We have examined all the material facts bearing upon the issues between the parties, and summing them up, as against Mrs. Snell and John Mowery, we hold that these judgments in hands of the plaintiff Wright, by assignment from Thomas Mowery, are valid as security for the payment of said notes; and being so, the judgment of the court is that the plaintiff is *98 ’.Entitled to the belief prayed for in his supplemental petition* With costs.
McClure & Smyser, for Plaintiff.
Capt. J. R. Taylor & C. A. Weiser, for Defendant.

Note — McClure & Smyser, for Plaintiff: Contended that the aotion Was ohe in equity to remove a cloud on title to enable ¿aia to be .made; that, tha proceeding was not under sees. 6343 and 6344 K. S., and that such aotion was clearly maintainable 4h Ohio. '29 Ohio St, 596; 24 Ohio St., 455 & 456; 18 Ohio St., ts2; Bates'. Plead. & Praot., 454; Maxwell Code Plead., 642; Enoy., Plead. & Pract. 397.
',. Judgments by confession not collaterally impeachable; 13 ’Ohio St., 446; Í6 Ohio St., 181; 37 Ohio St., 221; 43 Ohio St., 62; .. Even, though, fraud is alleged; 39 Ohio St., 387; 8 Ohio, 109; f, Ohio Si; %08; 17 Ohio St., 484; 23 Ohio St.. 415; 28 Ohio St., VÓ2. . . .
Such judgment is conclusive of the debt: 1 Ohio. 146; 1 Hammond. 8¿l;,Bump on Fraudulent Conveyances, 558; 12 Am. 4fe Eng.. Eriby;, 149 (u); 24 Ohio St., 432-437.
A Consideration of judgment not inquired into; 4 Wait’s Actions & Defenses; 195.
; Wright claimed an interest by assignment of judgment to trim ■ How judgment assigned. 2nd Black on Judgments, seo. '«45, note lR; .60 Am. Dec., 85.
The levy of the execution upon the real estate of Mrs. Snell •fereated a specific lien, and John N. Mowery, a stranger and a •¿ubsequeht purchaser, would not only be bound by the lien tiut would acquire nó rights as against Wright, assignee of the judgment; fot a valuable consideration and in good faith with-put knowledge of infirmity in the judgment or liec. £5 Ohio St., 233, 255.
There is .no evidence showing any knowledge on the part of Wright as fcp any infirmity in the judgment in favor of Thomas Mowery and against Mrs. Snell. A. J.Thomas, an attorney, who Originated,.or participated in the execution of the noteB subsequently reduced to judgments on which executions issued and levies were made, but it is not the law that Thomas being also attorney for Wright, that whatever knowledge Thomas had in respect to the notes and judgments would be imputable to Wright. 57 Am. Dec., 916 <fe 899; Pomeroys’ Equity secs. 674 & 675
Contended under the pleadings and evidence it clearly appears that Mrs. Snell clothed Thomas Mowery with apparent ownership of notes and judgments, and all such rights as legally pertained to such ownership. 14 Am. S. 154; 3 Am. S., 184, note 201 & 202; 25 Am. Dec., 611 & 612; 9C. C., 110; 56 Ohio St., "351.
Wright had the right to rely on what the records disclosed when he acquired an interest in the judgments by assignment; 63 O. S., 471.
And,'this would be true if Thomas Mowery stood in either relation of agent or trustee for Mrs. Snell; 63 O. S., 471.
*99 At the time Wright acquired his interest by assignment Thomas Mowery was apparent owner cl the jud'ginants a-ud liens by reason of the levy, and this ownership was ’ apparent upon the records of the county, to which Wright looked, upon which he had the light to rely. '
Also contended that if the notes and judgments were fraudulent in design and purpose and John N.'Mowery had knowledge of such design and purpose, he and Mrs. Snell could not be beard to assail then as against one,who ínnoeetitly-and for a good consideration acquired rights in such judgments. The law would leave them where they piaced themselves,